UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X   Case No.

STEPHEN MUSACCHIO,

                                         Plaintiff,                    **COMPLAINT**

              -against-
                                                                      **PLAINTIFF DEMANDS**
THE HERTZ CORPORATION,                                                **A TRIAL BY JURY**

                                         Defendant.

------------------------------------------------------------------------------X

        Plaintiff, Stephen Musacchio, by and through his attorneys, Nisar Law Group, P.C.,

hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this whistleblower retaliation action pursuant to New York Labor Law §

        740, *et. seq.*, and complains that Defendant unlawfully terminated his employment after

        he objected to, and complained about, Defendant's violations of New York State

        Executive Order 202.8 ("Executive Order 202.8"), which was enacted by New York

        Governor Andrew Cuomo to protect the general public from possible exposure to

        COVID-19, a potentially deadly disease.

2.      Plaintiff seeks damages to redress the injuries he has suffered as a result of being

        retaliated against and discharged by Defendant solely on the basis of his status as a

        whistleblower.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is

        complete diversity of citizenship and the matter in controversy exceeds, exclusive of

        interest and costs, the sum of $75,000.00.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part

        of the events or omissions giving rise to this action, including the unlawful employment

        practices alleged herein, occurred within this district.

## PARTIES

5.      At all times relevant, Plaintiff Stephen Musacchio ("Plaintiff") was and is a resident of

        the State of New York and Suffolk County.

6.      At all times relevant, Defendant THE HERTZ CORPORATION ("Defendant") was and

        is a foreign business corporation, duly authorized and existing pursuant to, and by virtue

        of, the laws of the State of Delaware, with its principal place of business located at 8501

        Williams Road, Estero, Florida 33928.

7.      At all times relevant, Defendant owned, operated and/or maintained a Retail Auto Sales

        showroom, located at 390 East Jericho Turnpike, Smithtown, New York 11787

        ("Smithtown Retail Auto Sales").

8.      At all times relevant, Plaintiff was an employee of Defendant and worked at Defendant's

        Smithtown Retail Auto Sales showroom.

## MATERIAL FACTS

9.      On or about August 20, 2018, Plaintiff began working for Defendant as a "Sales and

        Finance Manager" selling used cars at Defendant's Smithtown Retail Auto Sales

        showroom, earning approximately $36,000 per year in annual salary plus 3.5%

        commission on total gross profit and bonuses.

10.     Throughout his employment, Plaintiff was an overall good employee and routinely

        received compliments for his work performance.

11.     However, things changed on March 23, 2020 when Plaintiff openly objected to

Defendant's violation of Executive Order 202.8.

12.     By way of background, on or about March 20, 2020, in response to rapid spread of

COVID-19, New York Governor Andrew Cuomo issued Executive Order 202.8, which,

among other things, directed all businesses to utilize any telecommuting or work-from-

home procedures to the maximum extent possible and reduce the in-person workforce at

any work locations by 100 percent, with the exception of essential businesses.  The Order

defined essential businesses as:

> essential health care operations including research and laboratory services;
> essential infrastructure including utilities, telecommunication, airports and
> transportation infrastructure; essential manufacturing, including food
> processing and pharmaceuticals; essential retail including grocery stores
> and pharmacies; essential services including trash collection, mail, and
> shipping services; news media;  banks and related financial institutions;
> providers of basic necessities to economically disadvantaged populations;
> construction; vendors of essential services necessary to maintain the
> safety, sanitation and essential operations of residences or other essential
> businesses; vendors that provide essential services or products, including
> logistics and technology support, child care and services needed to ensure
> the continuing operation of government agencies and provide for the
> health, safety and welfare of the public.

13.     The following day, on March 21, 2020, Joseph Glidden (Defendant's Regional General

Manager) sent out an email which stated, in relevant part:

> All the managers need to be in on Monday [March 23, 2020] so we can
> wrap up, plan and schedule for the next few weeks.  You as managers are
> essential employees and needed for the business.

Plaintiff immediately realized that this directive violated Executive Order 202.8 and was

nervous about the consequences of potentially being exposed to COVID-19.

14.     Accordingly, on Monday, March 23, 2020, Plaintiff sent an email to his supervisor,

Matthew Bodnar (Smithtown Auto Retail Sales General Manager), and Mr. Glidden in

which he wrote:

> On March 20th, Governor Cuomo had ordered 100% closure of non-essential Businesses (effective March 22nd 8 p.m.). He lists businesses that are considered 'Essential' and Car Sales is not one of them. As I understand I am considered an essential employee, the business itself is not essential. The governor also includes in his plan, non-essential gatherings of any size should not take place. In addition to this rule, I do not feel comfortable putting my health at risk or my elderly mother that has underlying health conditions. The building has not been sanitized to my knowledge and we are sharing one restroom for employees and customers. I am more than happy to discuss our future plans for the next coming weeks over the phone.

15. The next day, on March 24, 2020, Mr. Glidden notified all of Defendant's Smithtown Retail Auto Sales employees that everyone was being furloughed immediately due to COVID-19.

16. Then, on or about April 14, 2020, while still on furlough and without any warning, Mr. Glidden called Plaintiff on the telephone and suddenly terminated his employment due to a purported "reduction in workforce." During this conversation, Mr. Glidden explained to Plaintiff that this termination had nothing to do with performance and encouraged him to reapply for his position in the future after COVID-19 is under control.

17. However, this purported reason for termination was clearly pretextual, as Defendant's Smithtown Retail Auto Sales location actually became exponentially more successful as a result of COVID-19 due to the fact that Defendant began to put nearly all of their rental inventory up for sale when car rentals slowed due to COVID-19. Therefore, it defied logic that Defendant's Smithtown Retail Auto Sales location would need to eliminate its only Sales and Finance Manager.

18. In fact, only two weeks later, on or about April 28, 2020, Defendant brought back from furlough all the other employees of Smithtown Retail Auto Sales.

19. On June 15, 2020, Plaintiff spoke to Chris Caramico, General Manager of Defendant's

Rockville Centre Retail Auto Sales showroom, located at 1297 Woodfield Rd, Rockville Centre, New York 11570, during which Mr. Caramico informed Plaintiff that Rockville Centre had an open position for "Sales and Finance Manager" and told Plaintiff that "if you want the job, it is yours."

20.  In fact, that same day (June 15, 2020), Mr. Caramico even sent Plaintiff an email containing the link for the job posting so that Plaintiff could apply through Defendant's online job portal.

21.  The following day, on June 16, 2020, after Plaintiff noticed that his former position at the Smithtown Retail Auto Sales showroom was also posted to Defendant's job portal, Plaintiff applied for both the Rockville Centre Sales and Finance Manager position as well as the Smithtown Sales and Finance Manager position (Plaintiff's former position that was purportedly eliminated).

22.  Right after applying (also on June 16, 2020), Plaintiff sent an email to his former supervisor, Mr. Bodnar, informing him that, "I applied for my position back.  I know you're busy, when would be a good time for me to call you?"  Mr. Bodnar never responded to this email.

23.  As such, that same day (June 16, 2020), Plaintiff spoke to a former co-worker at the Smithtown Retail Auto Sales location during which he (the co-worker) informed Plaintiff that although Defendant's business was doing well, Mr. Bodnar was nonetheless torn over whether to hire Plaintiff back.  The co-worker explained that Mr. Bodnar admitted that Plaintiff "knows this business" but expressed hesitation and reservations because Mr. Bodnar did not like the fact that Plaintiff had sent an email to him regarding the pandemic and Governor Andrew Cuomo's Executive Order.  As a result, the former co-worker told

Plaintiff that Mr. Bodnar just doesn't feel that he (Plaintiff) is committed to the job.

24. Disappointed to hear this but hopeful about the Rockville Centre Retail Auto Sales position, on June 18, 2020, Plaintiff sent an email to Mr. Caramico notifying him that, "I applied for the [Rockville Centre] job online on [June 16]. I know you said the job is mine if I want it, so what is the next step?" However, when Mr. Caramico never responded to Plaintiff's email either, Plaintiff became concerned that he had been blackballed from the company as a result of his March complaint.

25. Accordingly, on June 22, 2020, Plaintiff emailed Mr. Glidden, and wrote:

> Just wanted to make you aware that I applied for both Combo Manager positions (Smithtown and Rockville Centre) through the portal on [June 16]. As per our last conversation in April, you said I could always re-apply for the position in the future. Since the positions are the same and I would be performing the same duties, my first choice would be Smithtown. I was there the last 20 months and I am familiar with the store. Thank you for the consideration.

Mr. Glidden never responded to this email.

26. On or about July 6, 2020, concerned that nobody was responding to him, Plaintiff called a woman named Latasha (who was employed as Defendant's HR Business Partner) and asked if she had any information on the status of his applications. In response, Latasha instructed Plaintiff to contact Nyiesha Carrington (Defendant's Internal Recruiter) and provided Plaintiff with Ms. Carrington's email address.

27. As such, on July 6, 2020, Plaintiff sent an email to Ms. Carrington and wrote:

> My name is Stephen Musacchio, I am a previous employee at the Smithtown location as a Combo Manager. I applied for my previous position as well as the Rockville Centre position on 6/16/20 through the Hertz.jobs.com site. I spoke to Latasha from HR business partner; she gave me your email address. I am writing to you because I have not heard back and I was wondering what the status is for this position.

28. Later that same day, Ms. Carrington called Plaintiff on the telephone and explained to

him that the Rockville Centre position had already been filled.  Ms. Carrington further told Plaintiff that another recruiter named Crystal Bentley was responsible for Plaintiff's territory and agreed to forward Plaintiff's information to Ms. Bentley so that she and Plaintiff could discuss the status of the Smithtown position for which he applied. Unfortunately, Ms. Bentley never contacted Plaintiff and Plaintiff did not have any contact information for Ms. Bentley.

29.     In fact, on or about July 16, 2020, Defendant offered Plaintiff's former position to another applicant, who declined the offer.

30.     On or about September 1, 2020, after several more applicants turned the position down, an individual named Arnie (someone with significantly less experience than Plaintiff in this position) officially replaced Plaintiff and started working as "Sales and Finance Manager" at Defendant's Smithtown Retail Auto Sales location.

31.     Based on the foregoing, it is clear that on or about April 14, 2020, Defendant terminated Plaintiff's employment solely in retaliation for his complaint about people congregating in the workplace, which was made unlawful by New York Executive Order 202.8 due to the fact that it created and presented a substantial and specific danger to the public health.

32.     Defendant's purported reason for Plaintiff's termination (i.e., reduction in workforce) was also clearly pretextual, as Defendant posted Plaintiff's former position soon after terminating him even though Defendant was aware that Plaintiff eagerly wanted his job back.

33.     Defendant did not like the fact that Plaintiff had complained about Defendant's violations of law related to the public's health and safety and ultimately terminated his employment as a result.

34.    But for the fact that Plaintiff had objected to Defendant's safety violations, Defendant would not have terminated his employment.

35.    Upon information and belief, Defendant's actions were done maliciously and/or in reckless disregard for Plaintiff's civil rights.

36.    Upon information and belief, Defendant's actions and conduct were intentional and intended to harm Plaintiff.

37.    Plaintiff's performance was, upon information and belief, above average during the course of his employment with Defendant.

38.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses.

39.    As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

## AS AND FOR A FIRST CAUSE OF ACTION
## NEW YORK LABOR LAW § 740

40.    Plaintiff hereby repeats and realleges each allegation contained herein in all above paragraphs number as if more fully set forth herein.

41.    New York State's Labor Law § 740 (entitled "Retaliatory personnel action by employers; prohibition") states, in pertinent part:

> 2. Prohibitions. An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:

> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud; [or,]

> (c) objects to, or refuses to participate in any such activity, policy or practice in

violation of a law, rule or regulation.

4. Violation; remedy.

(a) An employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction for relief as set forth in subdivision five of this section within one year after the alleged retaliatory personnel action was taken.

42.     Defendant acted in an unlawful and retaliatory manner following Plaintiff's disclosure to his supervisors violations of law which presented a substantial and specific danger to the public health or safety, and/or Plaintiff's refusal to participate in any such activity, policy or practice in violation of a law, rule or regulation.

43.     Plaintiff complained to his supervisors about violations of law and was subsequently terminated as a result of his complaint.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendant:

A.      Declaring that Defendant engaged in unlawful employment practices prohibited by New York State's Labor Law § 740, *et. seq.* in that Defendant unlawfully retaliated against Plaintiff and terminated his employment;

B.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful termination of employment and to otherwise make him whole for any losses incurred and damages sustained as a result of all other unlawful employment practices herein complained of;

C.      Awarding Plaintiff attorneys' fees, costs and expenses incurred in the prosecution of the action; and

D.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices and all other unlawful practices as complained of herein.

Dated:  New York, New York
            November 23, 2020

                                                          **NISAR LAW GROUP, P.C.**

                                                By:    _____
                                                          Casey Wolnowski, Esq.
                                                          *Attorneys for Plaintiff*
                                                          One Grand Central Place
                                                          60 East 42nd Street, Suite 4600
                                                          New York, New York 10165
                                                          Ph: (646) 449-7210
                                                          Fax: (516) 604-0157
                                                          Email:cwolnowski@nisarlaw.com